IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

WILSON QUILES                                                  PLAINTIFF

vs.                                    CIVIL NO. 04-3064

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION          DEFENDANT

## MEMORANDUM OPINION

Wilson Quiles (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"), under Titles II and XVI of the Act.

## Background:

The applications for DIB and SSI now before this court were protectively filed on October 25, 2002, alleging an onset date of August 23, 2001, due to the residuals of a lumbar laminectomy and cervical fusion, as well as post traumatic stress disorder ("PTSD"). (Tr. 60-64, 65-74, 355-358). An administrative hearing was held on March 4, 2004. (Tr. 367-429). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on March 4, 2004, plaintiff was forty-five years old and possessed a high school education, as well as a commercial drivers license. (Tr. 15, 78, 376-377). The record reveals that he has past relevant work ("PRW") as a truck driver. (Tr. 15).

On April 27, 2004, the Administrative Law Judge ("ALJ"), found that plaintiff had severe

impairments, but that those impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 23-24). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ("RFC"), to perform light work limited only by his ability to occasionally climb, kneel, crawl, finger with his right hand, and push and pull with his right leg. (Tr. 24). He also noted that plaintiff was unable to work around ropes, ladder, and scaffolds; perform frequent overhead reaching; and, required a position with a sit/stand option. With the assistance of a vocational expert ("VE"), the ALJ determined that plaintiff could not perform his past relevant work ("PRW"), but maintained the RFC to perform the positions of inventory clerk and surveillance system monitor. (Tr. 24).

On August 6, 2004, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties were informed of their right to file appeal briefs, but plaintiff has chosen not to do so. (Doc. # 7).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

AO72A
(Rev. 8/82)

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevent him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

3

given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's failure to properly consider and evaluate the medical evidence contained in the record. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). While the ALJ does acknowledge the mental evaluations completed by Drs. Brazas and Durmon, he fails to discuss the fact that each physician rated plaintiff's global assessment of functioning at forty-five and forty-one, respectively. (Tr. 278, 342). According to the Diagnostic and Statistical Manual of Mental Disorders, a score in this range is evidence of "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or [a] serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV 34 (4th ed. Revised 2000). Given the seriousness of this score, we believe that the ALJ should have evaluated this information in his opinion, and provided an explanation for its dismissal.

We also note that Dr. Durmon, one of plaintiff's treating doctors, completed an RFC assessment of plaintiff. It was Dr. Durmon's opinion that plaintiff's symptoms included anhedonia; appetite disturbance with weight change; decreased energy; blunt, flat, or inappropriate affect;

4

feelings of guilt or worthlessness and helplessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience; psychomotor agitation or retardation; persistent disturbances of mood or affect; changes in personality; apprehensive expectations; paranoid thinking or inappropriate suspiciousness; recurrent obsessions or compulsions which were the source of marked distress; emotional withdrawal or isolation; persistent irrational fear of a specific object, activity, or situation which resulted in a compelling desire to avoid the dreaded object, activity, or situation; hallucinations or delusions; easy distractibility; problems with his memory; sleep disturbance; and, recurrent severe panic attacks occurring on the average of at least once a week. (Tr. 343). After diagnosing him with major depressive disorder with severe and recurrent psychotic symptoms and PTSD, Dr. Durmon then concluded that plaintiff's ability to carry out very short and simple instructions was seriously limited. (Tr. 342-343). Further, the doctor indicated that he was unable to accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work, maintain attention for two hour segments, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, and be aware of normal hazards and take appropriate precautions. (Tr. 344). Plaintiff was also said to lack the ability to understand, remember, and carry out detailed instructions, set realistic goals or

5

make plans independently of others, deal with the stress of semiskilled and skilled work, interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation. (Tr. 344-345). As such, Dr. Durmon determined that plaintiff would likely miss more than four days per month of work, due to his illness. (Tr. 345). In fact, records indicate that plaintiff scored a thirty-eight on the Beck Depression Inventory, which, according to the legend contained on the inventory itself, is indicative of severe depression. (Tr. 347).

Although the ALJ does state that Dr. Durmon completed an RFC assessment, he does not provide an explanation for his dismissal of Dr. Durmon's conclusions. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight). As Dr. Durmon is a treating physician, we believe that the remand is necessary to allow the ALJ to properly evaluate Dr. Durmon's opinion. Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R § 404.1527(d)(2); *see also* SSR 96-2p; *See Prosch v. Apfel,* 201 F.3d at 1010, 1012-13 (8th Cir. 2000).

Likewise, Dr. Brad Williams, a non-examining, consultative psychologist, completed a psychiatric review technique form, as well as a mental RFC assessment of plaintiff. (Tr. 289-306). After reviewing plaintiff's medical records, Dr. Williams diagnosed plaintiff with anxiety, as evidenced by recurrent and intrusive recollections of a traumatic experience, resulting in marked

AO72A
(Rev. 8/82)

distress. (Tr. 294). He was of the opinion that plaintiff had mild restrictions in his activities of daily living, with moderate restrictions regarding his ability to maintain social functioning, concentration, persistence, and pace. (Tr. 299). Further, moderate limitations were noted in the areas of completing a normal workday and workweek without interruption, accepting instructions and responding appropriately to criticism from supervisors, and setting realistic goals or making plans independently of others. (Tr. 303-304). As such, Dr. Williams concluded that plaintiff could perform work where interpersonal contact was routine, but superficial; the complexity of the tasks is learned by experience; and, the tasks require limited judgment and supervision. (Tr. 305). However, once again, the ALJ failed to explain his reasoning for dismissing these findings. Instead, he merely stated that the RFC "conclusions reached by physicians employed by the state disability determination service support[ed] a finding of 'not disabled,'" and found that plaintiff had no non-exertional mental limitations that would interfere with his ability to work. (Tr. 21-23). Given the nature of the evidence concerning plaintiff's mental impairment(s), we believe remand is necessary to allow the ALJ to reevaluate this evidence, and to provide further explanation for his findings.

Additionally, it is significant to note that the ALJ supported his dismissal of plaintiff's physical impairments with a statement that plaintiff's condition could not be as severe as alleged, as it had "required no more than medical means to control." (Tr. 20). However, if that were the disability standard, this court would be hard pressed to find anyone whose medical impairment required "more than medical means to control," as medical treatment is generally the treatment of choice for medical impairments. Even surgery is a medical means utilized to control and/or treat a medical problem. Therefore, absent any evidence to suggest that plaintiff had any other reasonable treatment choices

7

available to him, we are of the opinion that the ALJ's use of this phrase to support his decision was misplaced. *See Tate v. Apfel*, 167 F.3d 1191, 1197 (8th Cir. 1999) (holding that ALJ improperly dismissed plaintiff's subjective complaints on the basis that they did not necessitate surgical intervention, where the record indicated that surgery had not been a medical option offered to plaintiff). Accordingly, on remand the ALJ is directed to re-evaluate plaintiff's subjective allegations in accordance with *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), specifically discussing each *Polaski* factor in the context of plaintiff's particular case.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this the 26th day of October 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)